UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In Re:

| | |
|---|---|
| Arthur C. Kesteloot Jr., | Case Number 13-50775 |
| Debtor. | Chapter 7 |
| | Honorable Mark A. Randon |
| _____/ | |
| Mark H. Shapiro, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | Adversary Case Number 14-04660 |
| Corrinne Smorra-Kesteloot, | |
| Defendant. | |
| _____/ | |

## AMENDED OPINION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

This is a fraudulent transfer adversary proceeding. In the midst of a divorce, Debtor and his wife, Corrinne Smorra-Kesteloot ("Smorra"), stipulated to an order that Debtor's 2012 employee bonus would be used to retire their credit card debt. But after Debtor lost his job, the couple hatched a new plan for the bonus money: Debtor would pay Smorra $10,000.00 as a property division and $4,000.00 a month in temporary spousal support; only minimum monthly payments would be made on the credit cards.

1

Six weeks after Smorra received the last transfer–and the bonus money was gone–Debtor filed Chapter 7 bankruptcy.

Cross motions for summary judgment are pending. The Chapter 7 Trustee says Debtor's transfers to Smorra were at least constructively fraudulent and should be avoided. Smorra claims the transfers were made for reasonably equivalent value: to satisfy Debtor's spousal support and equitable property division obligations under Hawaii law. The Court heard argument on June 2, 2015.

Although spousal support is not mandatory in Hawaii and the stipulated order was never amended to reflect the new agreement, Debtor did receive *some* value for the spousal support and property division payments. The issue of whether that value was less than reasonably equivalent is a question of fact, which must be decided at trial. The Court, therefore, **DENIES** both motions.

## II. BACKGROUND

Debtor and Smorra were married for 17 years. During the marriage, Debtor was the primary breadwinner. He was employed as Vice President of Marketing for Prudential Locations, earning nearly $200,000.00 a year. Debtor also received annual bonuses–at times in the six-figure range. Smorra worked sporadically during the marriage. She has a history congenital heart problems, which prevented her from working full time.[1] Still, the couple established a comfortable life together in Honolulu,

---

[1] Smorra testified during her divorce trial, in August and September of 2014, that her health issues no longer limit her ability to work.

Hawaii for many years.

At some point, the relationship soured; Smorra filed for divorce on December 4, 2012, in the Family Court of the First Circuit in Oahu, Hawaii ("Hawaii Family Court"). Smorra's divorce petition sought $1,500.00 a month in spousal support and possession of the marital home.

Debtor and Smorra reached an agreement about the marital property, including the use of Debtor's anticipated 2012 employee bonus. On December 19, 2012, the Hawaii Family Court entered a stipulated order reflecting the couple's agreement ("the Stipulated Order").

Paragraph 3(b) of the Stipulated Order governed the use of Debtor's bonus:

> Upon receipt of Husband's employment bonus (anticipated by the end of December 2012), the funds *shall be used to pay off all currently existing credit card debts* (which include the parties' [$7,500.00] retainers charged to Husband's American Express credit card). *Any and all remaining balance from Husband's bonus shall be divided upon mutual agreement.*

(Emphasis added). The Stipulated Order also required Debtor to pay all of the household expenses until the marital home was sold–it did not require that he make any direct payments to Smorra.

Debtor lost his job on January 12, 2013, and, because both parties were now unemployed, their lawyers began negotiations to amend the Stipulated Order. Debtor verbally agreed to pay Smorra $4,000.00 per month in temporary spousal support and $10,000.00 as a marital property division. But the lawyers failed to amend the Stipulated

3

Order.

Debtor received his 2012 bonus for $30,055.00 on January 18, 2013.[2] He did not use the money to pay off the credit card debts as ordered.[3] Instead, based on the couple's verbal agreement, Smorra wrote herself three checks from the couple's joint bank account–into which Debtor's bonus check had been deposited:

- February 25, 2013 – $15,547.50 ($5,547.50 in spousal support; $10,000.00 as a property division);[4]

- March 30, 2013 – $4,000.00 (spousal support);

- April 15, 2013 – $3,049.00 (spousal support).[5]

Smorra received a total of $22,596.50. She used some of the money for utilities, groceries, and to care for her pets; she did not make a house or car payment in February, March, April, or May of 2013. Debtor filed bankruptcy on May 29, 2013.

Debtor and Smorra later moved to Michigan; the Hawaii divorce case was dismissed on December 19, 2013. The next day, Debtor filed for divorce in Oakland

---

[2] Debtor's earned a $112,500.00 bonus in 2012– of that amount the following deductions were made: $33,654.76 for federal and state taxes, social security and medicare; $2,533.53 for insurance and a flexible spending account; and $46,255.89 to repay two loans taken against Debtor's pay. Debtor's net bonus pay was $33,055.82.

[3] He made only the minimum payments due.

[4] According to Smorra, the $5,547.50 included a partial month of spousal support from the date of the verbal agreement.

[5] This transfer was less than $4,000.00 because only $3,049.00 remained in the account.

4

County, Michigan. The Michigan court entered a final order of divorce in October of 2014.[6]

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on

---

[6]The Michigan court awarded Smorra $1,227.00 in monthly spousal support, effective November 2014, which was later reduced to $500.00 a month. The court's written opinion included Smorra's trial testimony that she did *not* pay taxes on the 2012 bonus money transfers and would *not* agree to classify any of the payments as spousal support.

which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## IV. ANALYSIS

The Stipulated Order required Debtor to use the 2012 bonus money to pay creditors; Debtor paid Smorra instead. Trustee seeks to avoid the transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and recover the money under 11 U.S.C. §550. Section 548(a)(1)(B) provides:

> The Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
> (B) (i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
> (ii) (I) was insolvent on the date that such transfer was made or became insolvent as a result of such transfer or obligation.

Fraudulent transfers are also subject to avoidance pursuant to MICH. COMP. LAWS §566.35(1):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation**.**

Trustee bears the burden of establishing these conditions by a preponderance of the evidence. *In re Wilkinson*, 196 F. App'x 337, 341 (6th Cir. 2006) (trustee has the burden of proving each statutory element by a preponderance of the evidence). The parties' primary disagreement is whether Debtor received reasonable equivalent value for the

three transfers.

The determination of reasonably equivalent value is typically a question of fact. See *In re Humble*, 19 F. App'x 198, 200 (6th Cir.2001) (unpublished) (analysis of reasonably equivalent value is based upon the facts and circumstances of each particular case). Courts undergo a two-step analysis to determine reasonably equivalent value. First, the Court determines whether Debtor received *any* value in exchange for the transfers. *In re Leonard*, 454 B.R. 444, 455 (Bankr. E.D. Mich. 2011). Although the Bankruptcy Code does not define reasonably equivalent value, it does define value as "property, or satisfaction or securing of a present or antecedent debt of the debtor . . ." §548(d)(2).[7] Courts should not consider the totality of the circumstances in evaluating the threshold question of whether any value was received. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006) (citing *In re R.M.L., Inc.*, 92 F.3d 139,150 (3d Cir. 1996)). Instead, the Court's consideration is limited to the circumstances that existed *at the time of the transfer* to determine whether it was "legitimate and reasonable to expect some value accruing to the debtor."*Id.* (quoting *R.M.L., Inc.*, 92 F.3d 139,150 (3d. Cir. 1996)).

If Debtor did receive value for the transfers, the Court then determines whether

---

[7]Michigan's fraudulent transfer statute's definition of "value" is similar to the definition in §548. MICH. COMP. LAW 566.33(1) ("Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied"). The Michigan statute does not have a time limit corresponding to that in the Bankruptcy Code; other than that, the two provisions are substantially the same. *In re Chomakos*, 69 F.3d 769, 770 (6th Cir. 1995)

7

the value received was reasonably equivalent. *In re Leonard*, 454 B.R. at 455. "[T]he test used to determine whether a transfer was supported by reasonably equivalent value focuses on whether there is a reasonable equivalence between the value of property surrendered and that which was received in exchange." *In re Fisher*, 296 F. App'x 494, 501 (6th Cir. 2008) (quoting *In re Fordu*, 201 F.3d 693 (6th Cir.1999)). The date for determining reasonable equivalence is the date of the transfer. *In re Wilkinson*, 196 F. App'x 337, 342 (6th Cir. 2006); *In re Chomakos,* 69 F.3d 769, 771 (6th Cir. 1995) (the critical time is when the transfer is made).

    A.    **Debtor Received Some Value for the Transfers**

Smorra claims she was legally and contractually entitled to support and an equitable property division, under Hawaii law, when the transfers were made. If true, Debtor received value from Smorra because the transfers satisfied a present or antecedent debt owed. 11 U.S.C. §548(d)(2)(A).

Debtor and Smorra agree that the Hawaii Family Court did not require Debtor to pay spousal support. During oral argument, the Court asked Smorra's counsel what value, if any, Debtor received from Smorra in exchange for the transfers; counsel answered: "To fulfill a legal obligation. Number one he had an obligation to equitably divide the marital assets, that is his obligation in Hawaii. He also had an obligation to pay spousal support which is a part of the common law of the State of Hawaii."

Under Hawaii law, spousal support is not an automatic right. Hawaii law provides that, "after the filing of a complaint for divorce or separation the court *may* make such

8

orders relative to . . . support of either spouse pending such complaint as the court may deem fair and reasonable . . ." HAW. REV. STAT. §580-9. The operative word in the statute is "may;" meaning it is in the Court's discretion to award spousal support. *See Mayes v. McQuiggan*, No. 11-14465, 2015 WL 900269, at *4 (E.D. Mich. Mar. 3, 2015) (noting the statutory term "'may" is permissive, as opposed to the term "shall," which carries a mandatory, nondiscretionary connotation"). Still, to argue this means that Debtor did not receive any value for the transfers misses the mark.

First, had the parties' attorneys simply amended the Stipulated Order to provide for spousal support payments–as they had planned to do after Debtor lost his job–there would be little doubt that Debtor received value for the transfers. *See In re Whaley*, 190 B.R. 818, 822 (Bankr. N. D. Miss. 1995) (plaintiff was under a court order to make alimony payments; therefore, he received reasonably equivalent value).

Second, it is likely the Hawaii Family Court would have approved some payment to Smorra from the bonus money had it been made aware of the changed circumstances. *See In re Carbaat*, 357 B.R. 553, 561 (Bankr. N.D. Cal. 2006) (Where, given the parties' financial positions, court would *likely* have ordered the debtor to pay his wife's divorce attorney's legal fees, wife's agreement to pay her own legal fees was value).[8] Recognizing the unequal financial position of the parties, the Stipulated Order required Debtor to pay all of the household expenses on a temporary basis. After Debtor lost his

---

[8] Under HAW. REV. STAT. § 572-22, a court order is required to approve spousal support agreements

job, the bonus money was the only foreseeable source of income either party would have for a while. Smorra was not working and had only worked sporadically throughout the marriage; Debtor had historically paid all of the bills, including Smorra's living expenses. If Debtor not given Smorra some of the bonus money, she would have been unable to meet her basic living expenses. The Sixth Circuit has determined that "the greater weight of authority holds. . . in bankruptcy cases applying a similar fraudulent transfer provision, that a debtor does indeed receive "reasonably equivalent value" when he [or] she makes payments to his [or] her spouse (or co-habitant) that are used for household expenses." *U.S. v. Goforth*, 465 F.3d 730, 736 (6th Cir. 2006) (citing cases).[9]

In sum, the Court finds that Debtor did receive some value for the spousal support payments–even though they were not court ordered. *See In re Fordu*, 201 F.3d at 707 ("the standards for measuring the fairness of a property division in the domestic relations arena and reasonably equivalent value in a fraudulent transfer case are separate and distinct").

The second step of the analysis depends too heavily on disputed factual issues to be decided as a matter of law: Whether Debtor received less than reasonably equivalent value must be determined after a trial, which fleshes out the circumstances existing at the time of the transfers.

**B.     Debtor was Insolvent at the Time of the Transfers**

---

[9]True, Smorra did not make a car or house payment with the money. However, she did testify that the money was used to pay other household expenses.

The Debtor made the transfers while insolvent. He admitted that he could not pay his bills, as they came due, when Smorra received the transfers. Debtor testified he had to surrender two vehicles to creditors because he could not make the payments in February 2013–the same month he transferred $15,547.50 to Smorra. Debtor filed bankruptcy in May 29, 2013, a month after the last transfer. On his petition date, Debtor had $219,409.81 in assets and $378,526.28 in liabilities. *See* 11 U.S.C. §101(32)(A) (the term insolvent means the sum of an individual's debts is greater than all of such individual's property, at a fair valuation). The Court finds Debtor was insolvent when the transfers were made.

## V. CONCLUSION

Debtor received some value for the transfers to his wife, but genuine issues of material fact remain as to whether that value was less than reasonably equivalent. The Court **DENIES** both motions. The trial will proceed as scheduled.

**Signed on June 30, 2015**

                                            /s/ Mark A. Randon
                                      **Mark A. Randon**
                                      **United States Bankruptcy Judge**